IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BENARD McKINLEY, # R-30033,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 16-cv-00661-MJR |
| ) | |
| **MICHAEL ATCHINSON,** ) | |
| **KIMBERLY BUTLER,** ) | |
| **RICHARD HARRINGTON,** ) | |
| **BETSY SPILLER,** ) | |
| **JOSHUA SCHOENBECK,** ) | |
| **JARED PHILLIPS,** ) | |
| **REBECCA CREASON,** ) | |
| **C. WATSON, M. HOF,** ) | |
| **and UNKNOWN PARTIES,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Benard McKinley, an inmate who is currently incarcerated at Stateville Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against fifteen officials at Menard Correctional Center ("Menard") who made the decision to hold him in administrative detention for 1,082 days from 2012-15 (Doc. 1, pp. 9, 11-14). These officials include Michael Atchinson (former warden), Kimberly Butler (former warden), Richard Harrington (warden), Joshua Schoenbeck (lieutenant/intelligence officer/administrative detention review committee ("ADRC") member), Betsy Spiller (inmate counselor), Rebecca Creason (mental health doctor/ADRC member), M. Hof (intelligence officer/ADRC member), C. Watson (warden of operations/ADRC member), Jared Phillips (correctional officer/ADRC member), John Doe #1 (intelligence officer/ADRC member), John Doe #2 (inmate counselor/ADRC member), John Doe #3 (warden of operations/ADRC member), John

Doe #4 (ADRC member), John Doe #5 (ADRC member), and John Doe #6 (ADRC member) (*id*.). Plaintiff seeks monetary relief and expungement of all administrative detention placement documents (*id*. at 15).

Plaintiff also claims that Officer Phillips retaliated against him for filing a grievance to complain about the conduct of these prison officials by issuing Plaintiff a disciplinary ticket and placing him in temporary confinement on September 25, 2015 (*id*. at 16-17). Plaintiff brings a separate First Amendment retaliation claim against Officer Phillips. He seeks monetary damages against this defendant (*id*. at 18).

This matter is before the Court for preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint does not survive preliminary review under this standard.

## The Complaint

Plaintiff raises two separate retaliation claims in his complaint. First, he asserts that all fifteen defendants retaliated against him by confining him to administrative detention for 1,082 days from 2012-15 because he failed to provide Menard's internal affairs officers with information regarding an ongoing investigation and filed grievances and lawsuits to complain about his prolonged confinement in administrative detention (Doc. 1, pp. 9, 11-14). Second, Plaintiff asserts that Officer Phillips also retaliated against him for filing a grievance to complain about the harassing conduct of defendants by issuing him a disciplinary ticket (*id*. at 9,

16-17). A summary of the factual allegations offered in support of each claim is followed by an analysis of the claims below.

### Administrative Detention

According to the complaint, Plaintiff was called to Menard's Internal Affairs Office for an interview in an investigation on July 18, 2012 (*id.* at 11). He was unable to answer any substantive questions posed by the officers because he lacked the knowledge necessary to do so (*id.*). Nevertheless, Plaintiff was placed in investigative confinement status on July 25, 2012. When further questioning yielded the same results, Plaintiff was released from investigative status on August 6, 2012.

Less than three weeks later, Plaintiff was again placed in investigative segregation on August 24, 2012. The internal affairs officers told Plaintiff that they could place him in segregation for failing to provide them with information "whenever they wanted" (*id.*). He was released 34 days later on September 26, 2012.

On October 16, 2012, Plaintiff was again interviewed by an internal affairs officer. During the interview, Plaintiff accused the officer of harassment. When he again provided no answers to the officer's questions, Plaintiff was placed in administrative detention on October 25, 2012.

He remained in administrative detention for a total of 1,082 days. Plaintiff was locked behind a steel door, where he was deprived of sensory stimuli, visitors, phone calls, and educational opportunities. He became paranoid and anxious. He also suffered from abnormal blood pressure and frequent weight fluctuations (*id.* at 13-14).

The Administrative Detention Review Committee ("ADRC") reviewed his case every ninety days. Each time, Plaintiff "made it known to these defendants that the alleged factors that

prompted his placement in administrative detention w[ere] fabricated and thus unreliable" (*id*. at 13). He maintained that his placement was "[b]ased entirely on the retaliatory actions by the internal affairs and intelligence officers" (*id*.). According to Plaintiff, these officers initially placed him in administrative detention because he could not answer their questions during an internal affairs investigation. The ADRC ignored these arguments and refused to release Plaintiff from administrative detention. In doing so, the ADRC relied on "fabricated, and unreliable evidence" (*id*. at 11). Plaintiff asserts that the defendants' decision to continue holding him in administrative detention amounted to retaliation against him for filing "grievances, and lawsuits against such officers, and their co-workers" (*id*. at 13).

### Retaliatory Disciplinary Ticket

Plaintiff also claims that Officer Phillips retaliated against him for filing a grievance to complain about the above-described events by issuing him a disciplinary ticket on September 25, 2015 (*id*. at 16-17). According to the complaint, Plaintiff was interviewed by several internal affairs officers on September 22, 2015. During the interview, he characterized the above-described events as harassing and retaliatory in nature. He then prepared a grievance to this effect and handed it to Officer Phillips when he delivered a food tray to Plaintiff's cell. In the same grievance, Plaintiff threatened to go on a hunger strike until the officers stopped harassing and retaliating against him. When Officer Phillips read the grievance, he said, "Oh you are not eating." At that, the officer took away Plaintiff's food tray.

On September 25, 2015, Officer Phillips then issued Plaintiff a disciplinary ticket and placed him in temporary confinement[1] (*id*. at 17). The complaint does not indicate what rules Plaintiff was charged with violating. However, the allegations suggest that the charges were

---

[1] The complaint offers no allegations indicating how the conditions he faced in temporary confinement differed from administrative detention.

unsubstantiated. When Plaintiff submitted an emergency grievance to Warden Butler to complain about the ticket, the warden took him off of temporary confinement status and dismissed the ticket before he attended a prison disciplinary hearing (*id.*).

## Merits Review Under 28 U.S.C. § 1915A

Based on the allegations, the Court finds it convenient to reorganize the *pro se* complaint into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1:** **Fourteenth Amendment claim against Defendants for depriving Plaintiff of a protected liberty interest without due process of law in connection with his placement in administrative detention at Menard for 1,082 days in 2012-15.**
>
> **Count 2:** **First Amendment retaliation claim against Defendants for holding Plaintiff in administrative detention at Menard for 1,082 days in 2012-15 because he filed grievances and lawsuits against them.**
>
> **Count 3:** **Eighth Amendment claim against Defendants for subjecting Plaintiff to unconstitutional conditions of confinement in administrative detention at Menard for 1,082 days in 2012-15.**
>
> **Count 4:** **First Amendment retaliation claim against Officer Phillips for issuing Plaintiff a disciplinary ticket on September 25, 2015, after he filed a grievance to complain about the conduct of the fifteen defendants and threatened to go on a hunger strike until they stopped harassing and retaliating against him.**

As discussed in more detail below, **Counts 1, 2,** and **3** shall be dismissed without prejudice, and **Count 4** shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

**Count 1**

The complaint does not support a Fourteenth Amendment claim against the defendants for depriving Plaintiff of a protected liberty interest without due process of law in connection with his placement in administrative detention. Plaintiff pursued a similar claim against Defendants Atchinson and Harrington in *McKinley v. Harrington*, No. 13-cv-00937-SCW (S.D. Ill.) ("prior action"). In the prior action, Plaintiff claimed that these defendants deprived him of a property interest without due process of law when they placed him in administrative segregation without a pre-deprivation hearing. The Court concluded that Plaintiff's placement in administrative segregation, with all of its attendant punitive consequence, resulted in no deprivation of a protected property *or* liberty interest without due process of law. The Fourteenth Amendment claim (Count 1, prior action) was dismissed with prejudice, and Plaintiff is now barred from bringing the same claim against Defendants Atchinson and Harrington in this action.

The instant complaint challenges all fifteen defendants' decision to continue holding Plaintiff in administrative detention for 1,082 days during a four-year period without adequate due process protections. This claim is different than Count 1 in Plaintiff's prior action. Still, it is subject to dismissal for many of the same reasons.

A liberty interest is generally not implicated by an inmate's placement in administrative segregation. The Seventh Circuit has made it clear that "prisoners do not have a liberty interest in avoiding a transfer from the general prison population to discretionary segregation (*e.g.*, detention for administrative, protective, or investigative purposes)." *Hopkins v. Klindworth*, 556 Fed. Appx. 497 (7th Cir. 2014) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008)). In *Sandin*, the Supreme Court "explained that the Fourteenth Amendment provides to inmates a liberty interest in avoiding

transfers to more restrictive prison conditions if those conditions result in an 'atypical and significant hardship' when compared to 'the ordinary incidents of prison life.'" *Townsend v. Cooper*, 759 F.3d 678 (7th Cir. 2014) (citing *Townsend*, 522 F.3d at 768 (quoting *Sandin*, 515 U.S. at 484-86)). In other words, when an inmate is transferred into conditions that are more restrictive than those he faced in the general prison population – either through placement into protective segregation or discretionary administrative segregation – his liberty is affected "only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (citing *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005); *Sandin*, 515 U.S. at 484-87; *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009); *Townsend*, 522 F.3d at 768). When a transfer into such conditions occurs, the "prison must afford the inmate procedural protections" beforehand. *Townsend*, 759 F.3d 678 (citing *Sandin*, 515 U.S. at 487).

The conditions that Plaintiff describes in his complaint are more restrictive than ordinary prison life but not "unusually harsh." *Id*. at 691 (citing *Marion*, 559 F.3d at 698). These conditions include placement in a cell with a steel door, a general reduction in sensory stimuli, and reduced contact with the outside world. Significantly, Plaintiff does not allege that these deprivations were continuous. In fact, he provides no indication of the frequency, duration, or degree of these deprivations.

A liberty interest is implicated when the conditions are more restrictive. *See, e.g., Wilkinson*, 545 U.S. at 223-24 (inmate denied all human contact and subjected to light during every hour of confinement); *Gillis v. Litscher*, 468 F.3d 488, 490-91, 493-94 (7th Cir. 2006) (inmate in "Behavioral Modification Program" denied all bedding and clothing and deprived of

nearly all human contact or sensory stimulation); *Westerfer v. Snyder*, 422 F.3d 570, 589 (7th Cir. 2005) (inmate subjected to severe limitations on contact with others, showers, exercise, attorney visits, and access to personal property).

With that said, the length of Plaintiff's confinement in administrative detention was undeniably long. According to the complaint, he remained confined in administrative detention for 1,082 days during a four-year period. Even if Plaintiff's detention was not continuous, the length of his confinement is troubling and may support a Fourteenth Amendment claim against one or more defendants for deprivation of a liberty interest without due process of law.

However, Plaintiff identifies no violation of his due process rights that is attributable to a named defendant. The complaint fails to identify which defendant, if any, was responsible for the initial decision to transfer Plaintiff into administrative detention without a pre-deprivation hearing. He was subsequently provided with a hearing before the ADRC every ninety days, and he points to no violation of his due process rights that occurred in connection with any of these later hearings.

Given the foregoing discussion, the Court concludes that **Count 1** is subject to dismissal without prejudice against all of the defendants.

**Count 2**

The complaint also fails to articulate a viable retaliation claim against the defendants in connection with Plaintiff's assertion that he was confined in administrative detention for 1,082 days because he did not cooperate with the ongoing internal affairs investigation and/or he filed grievances and lawsuits against prison officials. To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and

(3) the First Amendment activity was at least a motivating factor in the defendants' decision to take retaliatory action. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal citations omitted). The retaliatory act does not have to violate the Constitution; it is sufficient that the exercise of a prisoner's constitutional rights is a motivating factor. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996).

Plaintiff alleges that the exercise of his constitutional rights under the First and Fifth Amendments served as a motivating factor for the defendants' retaliation. A government official may not retaliate against someone, in an effort to dissuade him or her from filing a lawsuit. A government official may also not retaliate against someone in an attempt to override the Fifth Amendment privilege against self-incrimination and compel testimony. *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977); *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

However, Plaintiff's complaint does not suggest a plausible link between his protected activity and his transfer to administrative detention. To begin with, he does not name any defendants in connection with the initial decision to place him in administrative detention for failing to answer questions during an investigation. Plaintiff also does not allege that his continued placement in administrative detention was motivated by any particular grievance or lawsuit, or other exercise of his First or Fifth Amendment rights. *See Furrow v. Marberry*, 412 Fed. Appx. 880 (7th Cir. 2011) (dismissal of retaliation claim upheld where there was no allegation in the complaint that transfer was motivated by a particular grievance or lawsuit). Mere speculation gives rise to no constitutional claim. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Tamayo v. Blagoyevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). The chronology of events described in the complaint must actually suggest that the defendants' retaliatory conduct was motivated by Plaintiff's constitutionally protected activity. The allegations in Plaintiff's

complaint do not. Accordingly, **Count 2** shall also be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 3

To the extent that the complaint challenges the conditions of Plaintiff's confinement, it fails to state a claim upon which relief may be granted. To state a claim, the complaint must suggest that Plaintiff was denied "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 525, 834 (1994); *Townsend*, 522 F.3d at 773. Further, the complaint must also suggest that the defendants exhibited deliberate indifference toward Plaintiff. Deliberate indifference is shown when the official knew that the inmate faced a substantial risk of serious harm and disregarded the risk by failing to take reasonable measures to address it. *Townsend*, 522 F.3d at 773. Although Plaintiff generally complains about the conditions he endured in administrative detention, the complaint does not indicate that Plaintiff put any particular defendant on notice of the conditions or asked a defendant to address the conditions. Absent any allegations to this effect, the complaint supports no deliberate indifference claim against the defendants, and **Count 3** is also subject to dismissal without prejudice for failure to state a claim upon which relief may be granted.[2]

## Count 4

The retaliation claim against Officer Phillips shall also be dismissed. Plaintiff alleges that Officer Phillips retaliated against Plaintiff for filing a grievance on or around September 22, 2015, by issuing him a disciplinary ticket. Prior to the disciplinary hearing on the ticket, Warden Butler dismissed it. The Seventh Circuit has made it clear that "[a] single retaliatory

---

[2] The Court further notes that Plaintiff was allowed to proceed with an Eighth Amendment conditions of confinement claim against Joshua Schoenbeck and Lance Phelps in *McKinley v. Schoenbeck*, No. 14-cv-1137-NJR-DGW (S.D. Ill.). That action is currently pending. Plaintiff cannot proceed with the same claim against these particular defendants in this action.

disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges*, 557 F.3d at 554 (*Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("A tort to be actionable requires injury. It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise. . . ."). Under the circumstances, **Count 4** shall be dismissed with prejudice.

## Pending Motions

1. **Motion for Recruitment of Counsel (Doc. 3)**

Plaintiff's motion for recruitment of counsel is hereby **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). If so, the Court must examine "whether the difficulty of the case -- factually and legally -- exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers

such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff indicates that he has been unable to recruit counsel on his own. He claims that he needs an attorney to represent him because he only has a high school education and has named several unknown defendants in this action. He cites no other impediments to proceeding *pro se*, such as language, writing, cognitive, or mental health barriers. The Courts finds that recruitment of counsel is not warranted at this time.

The complaint is coherent and well-drafted. Further, the fact that Plaintiff is no longer incarcerated at Menard does not prevent him from identifying unknown defendants. He has named several current employees (including Menard's warden) as defendants in this action; these defendants can respond to discovery aimed at identifying these unknown defendants with particularity. In light of these considerations, the Court is not persuaded that counsel should be recruited on Plaintiff's behalf. The motion for recruitment of counsel (Doc. 3) is denied. However, the denial is without prejudice, and the Court remains receptive to the idea of recruiting counsel should Plaintiff wish to renew his request at any time after filing his amended complaint.

2.  **Motion for Order Regarding Plaintiff's Trust Fund Statement (Doc. 9)**

Plaintiff's motion for order regarding trust fund statement is hereby **DENIED** as **MOOT**. The Court has received a certified copy of Plaintiff's trust fund statement and since granted his request to proceed *in forma pauperis* (*see* Doc. 7).

3.  **Motion for Copies (Doc. 10) and Motion for Court Order (Doc. 11)**

Plaintiff's motion for copies is hereby **GRANTED** in part, with respect to his request for a copy of the complaint (Doc. 1) and the Clerk's letter dated June 17, 2016 (Doc. 4), and

**DENIED** in part, with respect to his request for a copy of the motion for leave to proceed *in forma pauperis* (Doc. 2) and motion for recruitment of counsel (Doc. 3).

As a one-time courtesy to Plaintiff, the Clerk is **DIRECTED** to provide Plaintiff with a copy of the complaint (Doc. 1) for use in preparing his First Amended Complaint and the Clerk's letter (Doc. 4). As a general rule, however, the District Clerk will only mail paper copies of documents upon prepayment of the required fee. According to 28 U.S.C. § 1914(b), "[t]he clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States." The Judicial Conference Schedule of Fees section (4) provides that a fee of $.50 per page shall apply for reproducing any record or paper.

The IFP motion (Doc. 2) consists of 5 pages, and the motion for recruitment of counsel (Doc. 3) consists of 5 pages. Should Plaintiff wish to purchase copies of Documents 2 and 3, he must submit a request for both documents in writing to the Clerk of Court, along with the required prepayment of $5.00. All further requests for documents from the court file should also be made in writing to the Clerk of Court, by referring to the number listed for that document on the docket sheet and sending in the required prepayment.

## Disposition

The Clerk is **DIRECTED** to provide Plaintiff with a courtesy copy of the complaint (Doc. 1) and the Clerk's letter dated June 17, 2016 (Doc. 4).

**IT IS HEREBY ORDERED** that **COUNTS 1, 2,** and **3** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted, and **COUNT 4** is **DISMISSED** with prejudice on the same ground.

**IT IS FURTHER ORDERED** that Plaintiff's complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Plaintiff is **GRANTED** leave to file an amended complaint **on or before August 17, 2016**. Should Plaintiff fail to file his First Amended Complaint within the allotted time, dismissal will become with prejudice and a "strike" will be assessed. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994). Further, a "strike" may be assessed. *See* 28 U.S.C. § 1915(g).

Should Plaintiff decide to file an amended complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should be careful to label the pleading, "First Amended Complaint," and he must list *this* case number on the first page (Case No. 16-661-MJR). Plaintiff must present each claim in a separate count, and each count shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. Plaintiff should *include only related claims* in his new complaint. Claims found to be unrelated will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed. To enable Plaintiff to comply with this order, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is **ADVISED** that *this* dismissal shall not count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous

pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Finally, the First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file an amended complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 13, 2016**

                                                 **s/ MICHAEL J. REAGAN**
                                                 **Chief Judge**
                                                 **United States District Court**