**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BENARD McKINLEY, # R-30033,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 16-cv-00661-MJR |
| ) | |
| **MICHAEL ATCHINSON,** ) | |
| **KIMBERLY BUTLER,** ) | |
| **RICHARD HARRINGTON,** ) | |
| **BETSY SPILLER,** ) | |
| **JOSHUA SCHOENBECK,** ) | |
| **JARED PHILLIPS,** ) | |
| **REBECCA CREASON,** ) | |
| **C. WATSON,** ) | |
| **M. HOF, and** ) | |
| **JOHN DOE ##1-6,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Now before the Court for consideration is the First Amended Complaint ("amended complaint") (Doc. 19) filed pursuant to 42 U.S.C. § 1983 by Plaintiff Benard McKinley, an inmate who is currently incarcerated at Stateville Correctional Center ("Stateville"). In the amended complaint, Plaintiff alleges that fifteen officials[1] at Menard Correctional Center ("Menard") were responsible for the decision to hold him in administrative detention for 1,096[2]

---

[1] These officials include Michael Atchinson (former warden), Kimberly Butler (former warden), Richard Harrington (former warden), Joshua Schoenbeck (lieutenant/intelligence officer/Administrative Detention Review Committee ("ADRC") member), Betsy Spiller (inmate counselor), Rebecca Creason (mental health doctor/ADRC member), M. Hof (intelligence officer/ADRC member), C. Watson (warden of operations/ADRC member), Jared Phillips (correctional officer/ADRC member), John Doe #1 (intelligence officer/ADRC member), John Doe #2 (inmate counselor/ADRC member), John Doe #3 (warden of operations/ADRC member), John Doe #4 (ADRC member), John Doe #5 (ADRC member), and John Doe #6 (ADRC member).

[2] In the original Complaint (Doc. 1), Plaintiff claims that he was held in segregation for approximately 1,082 days.

days or more from 2012-15 (Doc. 19, pp. 9-30).  Plaintiff maintains that his prolonged placement in administrative detention gives rise to claims against the defendants under the First, Eighth, and Fourteenth Amendments (*id*. at 9).  In connection with these claims, he seeks declaratory judgment, monetary damages, and expungement of his administrative detention records (*id*. at 31).

## Merits Review Under 28 U.S.C. § 1915A

This matter is before the Court for preliminary review of the amended complaint pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to promptly screen prisoner complaints, including amended complaints, to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court must dismiss any portion of the amended complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).  The amended complaint survives preliminary review under this standard.

## First Amended Complaint

According to the allegations in the amended complaint, Plaintiff was incarcerated at Menard from 2004-16 (Doc. 9, p. 11).  The events giving rise to this action occurred from 2012-15, when Plaintiff was held in administrative detention continuously for nearly 1,100 days (*id*. at 9-30).  He claims that all fifteen defendants were directly involved in the three constitutional violations described in his amended complaint (*id*.).

On July 18, 2012, Plaintiff was called to Menard's internal affairs office for an interview in an ongoing investigation (*id*. at 18).  When several unidentified internal affairs officers asked him to answer questions in connection with the investigation, Plaintiff could not do so.  He

simply did not know the answers to their questions. When he explained this to the officers, they sent him back to his cell.

A week later on July 25, 2012, Plaintiff was taken from his job assignment and placed in "investigation confinement segregation" (*id*.). On August 2, 2012, he was interviewed a second time by the internal affairs officers. When Plaintiff again explained that he lacked the knowledge necessary to answer their questions, the officers told him that they could "be his best friend or wors[t] nightmare" (*id*.). Plaintiff lost his job on August 6, 2012.

Beginning on August 24, 2012, Plaintiff returned to "investigation confinement segregation" for approximately one month (*id*.). He was interviewed a third time on October 16, 2012. Once again, he could not answer the questions posed by the internal affairs officers.

Warden Atchinson made the decision to place Plaintiff in administrative detention on October 25, 2012. Joshua Schoenbeck carried out the order by placing him in the North Two Segregation Unit, where Plaintiff remained until October 27, 2015. During this time, Plaintiff progressed from Phase I through Phase III of the program and, in doing so, slowly regained some privileges (*id*.).

Plaintiff repeatedly accused Warden Atchinson of retaliating against him by placing him in administrative detention. The warden admitted that he was responsible for the placement decision (*id*. at 19). Plaintiff had no way to challenge it. He filed grievances, but they were denied. Placement decisions were deemed to be administrative in nature and subject to the discretion of Wardens Atchinson, Butler, and Harrington. Until July 2014, Plaintiff received no hearing to address his continued placement in administrative detention (*id*.).

On approximately ten separate occasions between October 2012 and October 2015, the wardens decided that Plaintiff's continued confinement in administrative detention was

appropriate. At four hearings that took place between July 2014 and October 2015, the other twelve defendants, who were each members of Menard's Administrative Detention Review Committee ("ADRC"), affirmed these decisions (*id*. at 20-21). At the ADRC hearings, Plaintiff accused the ADRC members of retaliating against him because he was unable to serve as an informant. The defendants responded by telling Plaintiff that his continued placement in administrative detention was clearly warranted (*id*.).

Plaintiff describes each of the ADRC hearings as a "sham" (*id*. at 12, 16). He was given no notice regarding the hearings or the "potential charges against him" (*id*.). The defendants withheld the reasons for his placement in administrative detention at each hearing. Plaintiff's placement term was repeatedly extended for reasons unknown to him.

Plaintiff remained in administrative detention for at least 1,096 days. He characterizes his time spent there as "three years in extreme isolation" (*id*. at 15, 26). He was allegedly treated the "same" as inmates who were housed in disciplinary segregation (*id*. at 12).

The condition of his cell was allegedly deplorable (*id*. at 26). Plaintiff was housed in a "dark, cramped and unsanitary" cell that was infested with mice, cockroaches, and other bugs (*id*. at 13). The windows were cracked and allowed air to freely flow into his cell from outside the prison. The heat was broken. As a result, Plaintiff endured extreme temperatures in the winter and summer months (*id*. at 13-14). For "months at a time," the cell also had no hot water (*id*. at 14). Plaintiff was denied cleaning supplies (*id*. at 26). At times, the lack of ventilation and unclean conditions induced asthma attacks (*id*. at 27).

The food portions were also nutritionally inadequate (*id*. at 13-14). Plaintiff describes the food as greasy, undercooked, or overcooked. He often suffered from stomachaches after eating

it (*id*.). Plaintiff had no other food options because he was prohibited from purchasing food from the prison's commissary.

He was essentially unable to exercise outside of his cell. Before Plaintiff could exit his cell, he was "stripped down naked, handcuffed, and feet shackled" (*id*. at 12). He could barely walk because the shackles cut into his ankles. During his detention in Phase I, Plaintiff was allowed a single opportunity to exercise outside of his cell each week, which consisted of his placement in a metal cage with a concrete floor outside for 5 hours (*id*.). During his placement in Phases II and III, Plaintiff went outside twice each week for 2.5 hours each time.

He was subject to other restrictions as well. For example, Plaintiff had a $15 spending limit at the prison's commissary and was rarely allowed to shop there. He was allowed no law library access, only one or two visits each month, and no human contact (*id*. at 12, 14). Phone calls were prohibited outright during his placement in Phase I, increased to 15 minutes per month in Phase II, and extended to 30 minutes per week in Phase III (*id*. at 14). His access to personal property was similarly restricted (*id*.). He had no access to educational, vocational, or religious programs during much of his detention (*id*. at 14, 16).

Because of the conditions of his confinement, Plaintiff developed problems with anxiety and paranoia (*id*. at 15). He suffered from abnormal blood pressure and weight fluctuations. He also had difficulty sleeping (*id*.).

In connection with these events, Plaintiff now names all fifteen defendants for depriving him of a protected liberty interest without due process of law in violation of the Fourteenth Amendment, for retaliating against him in violation of the First Amendment, and for subjecting him to unconstitutional conditions of confinement in violation of the Eighth Amendment (*id*. at 11-17, 26-30).

### Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* amended complaint (Doc. 19) in a manner that is consistent with the Court's initial screening order (*see* Doc. 12):

> **Count 1:** **Fourteenth Amendment claim against defendants for depriving Plaintiff of a protected liberty interest without due process of law in connection with his placement in administrative detention at Menard for 1,096 days in 2012-15.**
>
> **Count 2:** **First Amendment retaliation claim against defendants for holding Plaintiff in administrative detention at Menard for 1,096 days in 2012-15 because he filed grievances and lawsuits against them.**
>
> **Count 3:** **Eighth Amendment claim against Defendants for subjecting Plaintiff to unconstitutional conditions of confinement in administrative detention at Menard for 1,096 days in 2012-15.**

(Doc. 19, p. 9). The parties and the Court will continue using these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

The legal framework for each claim is set forth in the Court's initial screening order dated July 13, 2016 (*see* Doc. 12). The Court will not repeat its discussion of the applicable legal standards here, but fully incorporates the discussion contained in the initial screening order by reference herein (*id*.). The parties are encouraged to review that discussion in the initial screening order (*id*.). The Court hereby finds that the amended complaint states plausible claims against all fifteen defendants under the Fourteenth Amendment (Count 1), First Amendment (Count 2), and Eighth Amendment (Count 3). Accordingly, these claims shall receive further review.

With that said, Plaintiff may be foreclosed from pursuing portions of his claims against Warden Atchinson, Warden Harrington, and Joshua Schoenbeck. In 2013, he brought a Fourteenth Amendment due process claim (Count 1, prior action) against Warden Atchinson and Warden Harrington based on his prolonged placement in administrative detention and the attendant property restrictions that were imposed without a hearing. *See McKinley v. Harrington*, No. 13-cv-00937-SCW (S.D. Ill.). Count 1 in the prior action was dismissed *with* prejudice against both defendants. In addition, he is currently pursuing two First Amendment retaliation claims (Counts 2 and 3, severed action) and an Eighth Amendment claim for unconstitutional conditions of confinement (Count 4, severed action) against Joshua Schoenbeck in a case that was severed from the prior action. *See McKinley v. Schoenbeck*, No. 14-cv-01137-NJR-DGW (S.D. Ill.) ("severed case"). The factual allegations giving rise to all of these claims overlap with this case. However, this Court is unable to assess the extent to which Plaintiff's claims against Warden Atchinson, Warden Harrington, and Joshua Schoenbeck are duplicative of one another without additional information. The Court will address this matter in due course. For now, Counts 1, 2, and 3 shall proceed against all of the named defendants.

## Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Counts 1, 2, and 3 against the unknown defendants, who are identified in the amended complaint as six members of the ADRC (*i.e.*, John Doe ##1-6). These individuals must be identified with particularity before service of the amended complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants.

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Menard's current warden shall be added as a defendant, in his or her official capacity only, for the purpose of responding to discovery (informal or formal) aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the unknown defendants are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the amended complaint.

## Disposition

The Clerk is directed to **ADD** the current Warden of Menard Correctional Center, in his or her official capacity, as a defendant in this action for the sole purpose of responding to discovery aimed at identifying the unknown defendants (*i.e.*, John Doe ##1-6) with specificity.

**IT IS HEREBY ORDERED** that **COUNTS 1, 2,** and **3** are subject to further review against all of the defendants. As to **COUNTS 1, 2,** and **3,** the Clerk of Court shall prepare for Defendants **MENARD CORRECTIONAL CENTER WARDEN (official capacity only), MICHAEL ATCHINSON, KIMBERLY BUTLER, RICHARD HARRINGTON, JARED PHILLIPS, REBECCA CREASON, BETSY SPILLER, M. HOF, C. WATSON,** and **JOSHUA SCHOENBECK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 19), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to

the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that service shall not be made on Defendants **JOHN DOE ##1-6** until such time as Plaintiff has identified them by name in a properly filed motion for substitution. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local

Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 5, 2016**

s/ **MICHAEL J. REAGAN**
**Chief Judge**
**United States District Court**