IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENARD MCKINLEY,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL ATCHISON, KIMBERLY BUTLER, RICHARD HARRINGTON, BETSY SPILLER, JOSHUA SCHOENBECK, JARED PHILLIPS, REBECCA CREASON, C. WATSON, MICHAEL HOF, WARDEN OF MENARD CORRECTIONAL CENTER, KEVIN REICHERT, FRANK LAWRENCE, ALEX JONES, BRYAN KUDER, JEANETTE COWAN, and SHELLY FRANKLIN,<br><br>        Defendants. | Case No. 3:16-CV-661-NJR-MAB |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Report and Recommendation by Magistrate Judge Mark A. Beatty (Doc. 208), which recommends that the undersigned District Judge deny the Motion for Summary Judgment filed by all Defendants (Doc. 189). Defendants timely objected to the Report and Recommendation (Doc. 214). For the reasons set forth below, the Court adopts in part and rejects in part the Report and Recommendation and grants in part and denies in part Defendants' Motion for Summary Judgment.

## BACKGROUND

The following facts are not genuinely disputed for purposes of summary judgment:

On September 11, 2013, Plaintiff Benard McKinley filed suit in this District Court against Defendants Rick Harrington, Michael Atchinson, and Aimee Lang. *See McKinley v. Harrington*, 13-cv-937-MJR ("2013 McKinley"). Defendant Atchison was Warden of Menard Correctional Center from December 2011 to January 2013 (Doc. 190-1). Defendant Harrington was Warden of Menard Correctional Center from January 2013 until April 2014 (Doc. 190-2). Aimee Lang was a medical tech (2013 McKinley, Doc. 7).

McKinley alleged that on October 25, 2012, he was placed in Administrative Detention (AD)[1] under a new program implemented by then-Warden Atchison and continued by present-Warden Harrington (Doc. 190-2). The detention program, while characterized as non-disciplinary, subjected McKinley to the same restrictions on the possession of property as inmates in disciplinary segregation without any hearing or measure of due process (*Id.*). Specifically, McKinley claimed he did not receive certain property items until a few days after he was placed in AD (2013 McKinley, Doc. 1). Furthermore, he was forced to wait 60 days to submit a request to get his audio-visual privileges restored (*Id.*). The remainder of his property was not given him until January 29, 2013. (*Id.*). McKinley claimed this deprivation of his property without a hearing was a violation of his due process rights (*Id.*). McKinley further alleged a claim of deliberate indifference as to his asthma while he was in AD.

---

[1] The Court's threshold order in that case often referred to McKinley as having been placed in "administrative segregation" *See* 2013 McKinley, Doc. 7 at p. 4. Throughout the pleadings and even the Seventh Circuit's order in 2014 McKinley, the terms "administrative detention" and "administrative segregation" are used interchangeably. The Court notes, however, that McKinley alleged he was placed on "Administrative Detention Confinement Status," not administrative segregation. *See* 2013 McKinley, Doc. 1.

Upon threshold review in 2013 McKinley, the Court found that the Complaint alleged two counts (2013 McKinley, Doc. 7):

**Count 1:** Defendants Atchison and Harrington denied McKinley procedural due process in violation of the Fifth and Fourteenth Amendments when they subjected to him to administrative detention and its attendant "property" restrictions without any hearing; and

**Count 2:** Defendants Amy Lang and Michael P. Atchison were deliberately indifferent to his serious medical needs in violation of the Eight Amendment when they took no steps to secure an inhaler refill or otherwise have McKinley's asthma treated.

In reviewing Count 1, the 2013 McKinley Court noted that an inmate's "mere placement or retention" in AD does not deprive him of a protected liberty or property interest. Furthermore, McKinley did not allege that his term in AD extended his sentence in any way or implicated any liberty interest such that any due process rights were triggered (*Id.*). Accordingly, the 2013 McKinley court dismissed Count 1 and Defendants Harrington and Atchison with prejudice (*Id.*). The deliberate indifference claim with regard to his asthma survived preliminary review.

On May 1, 2014, McKinley moved to amend his Complaint in 2013 McKinley, and on October 6, 2014, he filed a motion for leave to supplement his Complaint. The proposed Amended Complaint (and supplement) alleged, in relevant part, that in April 2014, he was placed in Menard's AD step-down program, but subsequently was removed and placed back on AD status. He also alleged that, during his time in AD, he was in a cell with no heat, hot water, or sanitary supplies; the window in his cell was broken; and there was dirt and rodent feces on the floor. He claimed he told Joshua Schoenbeck and

Lance Phelps about the conditions but they refused to do anything.

McKinley's motions to amend and supplement the complaint were granted (Doc. 46). The Amended Complaint added new counts against Defendants Phelps and Schoenbeck for retaliating against him by placing him in administrative segregation for refusing to answer questions and for his religious beliefs, for subjecting him to excessive force in retaliation for filing 2013 McKinley, for thwarting his plans to marry in retaliation for filing 2013 McKinley, and for subjecting him to inhumane living conditions in AD in violation of the Eighth Amendment. Although the Motion to Amend was granted, the Court severed the claims against Defendants Phelps and Schoenbeck into a separate suit. *See McKinley v. Schoenbeck*, 14-cv-1137-NJR-DGW ("2014 McKinley").

McKinley filed a Second Amended Complaint in 2014 McKinley on July 6, 2015 (2014 McKinley at Doc. 43). The Second Amended Complaint added Chad Hasemeyer and Jacqueline Lashbrook as defendants in that matter, alleging these parties also retaliated against McKinley by placing him in segregation due to his inability to assist in an internal affairs investigation and for his religious beliefs. The Court granted summary judgment to all Defendants, a decision that McKinley appealed. In its opinion, the Seventh Circuit noted that "[a]fter McKinley was released from administrative detention in November 2015, he filed this civil-rights lawsuit." [2] The opinion also references McKinley's "over three years" in administrative detention on four instances. Ultimately, the Seventh Circuit reversed the Court's grant of summary judgment to Lashbrook,

---

[2] The Court notes, but does not comment on, the discrepancy between the Seventh Circuit's statement that McKinley filed his lawsuit in November 2015 and the fact that his Second Amended Complaint was filed in July 2015 (2014 McKinley, Doc. 43).

Page 4 of 20

Phelps, and Schoenbeck. 2014 McKinley is still pending.

McKinley filed this action on June 17, 2016 (Doc. 1) and amended his complaint on August 16, 2016 (Doc. 19).[3] In his First Amended Complaint, McKinley alleged that he was placed in AD in 2012 in retaliation for refusing to answer questions by internal affairs officers. He further claimed he had no hearing to address his continued placement in AD until July 2014. Prison officials met ten times between October 2012 and October 2015 to review his situation, but found that his continued confinement in AD was appropriate. At four hearings between July 2014 and October 2015, members of Menard's Administrative Detention Review Committee ("ADRC"), affirmed these decisions. McKinley, however, described these hearings a "sham." Finally, he claimed that the conditions of his cell were deplorable, as they were infested with mice, cockroaches, and other bugs, the window was cracked, the heat was broken, and he had no hot water for months at a time. He also was denied cleaning supplies.

After threshold review of his First Amended Complaint pursuant to 28 U.S.C. § 1915A (Doc. 20), McKinley was allowed to proceed on the following claims:

**Count 1:** Fourteenth Amendment claim against Defendants for depriving McKinley of a protected liberty interest without due process of law in connection with his placement in administrative detention at Menard for 1,096 days from 2012-2015.

**Count 2:** First Amendment retaliation claim against Defendants for holding McKinley in administrative detention at Menard for 1,096 days from 2012-2015 because he filed grievances and lawsuits against them.

---

[3] McKinley later filed a Second Amended Complaint that identified several unknown defendants but did not add any new claims or parties (Doc. 112).

**Count 3:** Eighth Amendment claim against Defendants for subjecting McKinley to unconstitutional conditions of confinement in administrative detention at Menard for 1,096 days from 2012-2015.

At that time, the Court noted that McKinley "may be foreclosed from pursuing portions of his claims against Warden Atchinson, Warden Harrington, and Joshua Schoenbeck" when he previously filed a due process claim against Atchison and Harrington that was dismissed with prejudice against both defendants, and when he was currently pursuing similar claims against Schoenbeck in another case (Doc. 20 at p. 7); *see McKinley v. Harrington*, No. 3:13-cv-00937-SCW (S.D. Ill. Sep. 11, 2013). Because the Court could not assess the extent to which the claims were duplicative, however, McKinley was permitted to proceed against all named defendants at that time (*Id.*).

## MOTION FOR SUMMARY JUDGMENT

On October 29, 2018, Defendants filed a motion for summary judgment arguing that McKinley's claims are barred by *res judicata*, they are entitled to judgment as a matter of law on his due process claims, McKinley's claims are barred in part by the statute of limitations, and they are shielded from liability by the doctrine of qualified immunity (Doc. 189).

Specifically with regard to *res judicata*, Defendants argued there is (1) a final judgment of the merits in 2013 McKinley in favor of Defendants Harrington and Atchison; (2) there is an identity of the cause of action as McKinley's claim in the case at bar and his claims in 2013 McKinley arise from his confinement in administrative detention; and (3) Defendants Harrington and Atchison are defendants in both suits.

Furthermore, because *res judicata* acts as a bar to a subsequent suit in every matter that might or could have been raised in the original action, McKinley's claims against the remaining Defendants that could have been brought in the original action are also barred.

With regard to the statute of limitations, Defendants argued that Section 1983 cases arising in Illinois are governed by a two-year statute of limitations. In this case, that means McKinley's allegations that occurred prior to June 17, 2014, are barred by the statute of limitations. Defendants further argue that the continuing violation doctrine does not apply because he has already filed suit twice before. To allow McKinley to reach back until 2012 would be permitting duplicate litigation. Furthermore, they argued, McKinley's claims against Defendants Atchison, Harrington, Jones, Reichert, and Lawrence must be barred by the statute of limitations as their roles ceased more than two years prior to McKinley filing this lawsuit.

Defendants next argued that they were entitled to summary judgment on the merits of McKinley's due process claim. Specifically, the Supreme Court has held that due process requires periodic reviews of an inmate's placement in administrative segregation, which the Seventh Circuit has held can be informal and non-adversarial. Here, Defendants argued, McKinley's placement was reviewed every 90 days, which was all the process due under the law.

Finally, Defendants argued they are entitled to qualified immunity.

McKinley filed a timely response in opposition (Doc. 192). With regard to his due process claim, he asserted that 2013 McKinley strictly involved a property interest claim, not his placement in AD. Specifically, he claimed that the behavioral program instituted

by Harrington and Atchison deprived him of his personal property without following the proper pre-deprivation procedures, thereby violating his due process rights. He further argued that his claims were not subject to the statute of limitations as he suffered a "continuing wrong" while in AD. Next, he argued Defendants are not entitled to summary judgment on the merits of his due process claim because he was continually placed in AD from October 25, 2012 to June 25, 2014, without any informal or formal notice of the reasons why he was placed there. Finally, he argued Defendants are not entitled to qualified immunity.

In his statement of undisputed material facts, McKinley admitted that the facts of 2014 McKinley "overlap[] with the facts in this case (McKinley v. Atchison, et al.) in its entirety."

### THE REPORT AND RECOMMENDATION AND OBJECTIONS

In his Report and Recommendation (Doc. 208), Judge Beatty acknowledged 2013 McKinley and 2014 McKinley but found that the doctrine of *res judicata* did not apply. Judge Beatty noted that while 2013 McKinley revolved around his initial placement in AD, the present case relates to his "continued confinement" in AD. He further stated: "When Plaintiff filed suit in 2013 McKinley, he had been confined in the ADU for less than a year, so it is unlikely the issue of continued placement could have been resolved in that action." (*Id.* at p. 10). As such, he concluded, "the two suits do not arise from a single group of operative facts . . . ."

Judge Beatty also found that Defendants were not entitled to summary judgment on the merits of McKinley's due process claim. First, he found that McKinley's

confinement in AD for more than three years in a dirty cell that lacked adequate heat and hot water implicated a protected liberty interest. Because his liberty was at stake, Judge Beatty next examined what process was due to McKinley. He found that McKinley received no process when he was initially placed in AD and was not told why he was in AD for 18 months. Furthermore, McKinley presented evidence from which a jury could conclude that the reviews were not constitutionally meaningful, as the forms used by Defendants provide only uninformative, boilerplate reasons for continuing his placement. Accordingly, he found there is a genuine issue as to whether the periodic reviews prior to July 2014 were anything more than "hollow formalities."

Judge Beatty further found McKinley's claims are not barred by the statute of limitations. He acknowledged that plaintiffs in Illinois have two years from the date that their cause of action accrues, *i.e.*, when they know or should have known their constitutional rights have been allegedly violated, to file a lawsuit. Here, however, McKinley's 2013 suit was about his initial placement in AD. Thus, he would not have known at that time that he had a cause of action related to his continued placement in AD. He further found that Defendants Atchison, Harrington, Jones, Reichert, and Lawrence were not entitled to summary judgment, despite their roles ceasing more than two years before McKinley filed suit, because there are genuine issues of material fact as to whether their roles actually ceased at that time and as to whether the statute of limitations was tolled.

Finally, Judge Beatty found that Defendants are not entitled to qualified immunity.
Defendants objected to the Report and Recommendation (Doc. 214), arguing that

McKinley has essentially filed and litigated multiple cases arising from the same set of facts. Defendants assert that there is an identity of the causes of action because McKinley knew as early as September 11, 2013, that his assignment in Administrative Detention was potentially indefinite and because *res judicata* bars claims that could have been litigated but were not. Defendants also argued that there is no question of fact that McKinley received all due process required under the law, and that the statute of limitations must bar McKinley's claims that accrued prior to June 17, 2014.

## LEGAL STANDARDS

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues to which specific objections have made, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment is proper only if the moving party can demonstrate "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## DISCUSSION

**I.** *Res Judicata*

Res judicata blocks a second lawsuit if there is (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action. *Barr v. Bd. of Trustees of W. Illinois Univ.*, 796 F.3d 837, 840 (7th Cir. 2015). There is identity of the causes of action where the two claims are based on the same, or nearly the same, factual allegations. *Id.* "[A] plaintiff cannot evade preclusion by 'identify[ing] a slightly different cause of action with one element different from those in the first, second, or third lawsuits between the same parties arising from the same events.'" *Id.* (quoting *Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011)). It is the law of this Circuit that, "even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action." *Id.* at 841. *Res judicata* bars not only matters decided in the prior action, but also any issues that could

have been raised in the prior suit. *Golden v. Barenborg*, 53 F.3d 866, 869–70 (7th Cir. 1995).

Here, there is identity of parties in that McKinley sued Harrington and Atchison in both 2013 McKinley and this case. And while there technically has not been a "judgment on the merits," a Section 1915(e)(2)(B) dismissal can have a *res judicata* effect over future *in forma pauperis* suits. *Keller v. Monroe Cty. Sheriff's Dep't*, 473 F. App'x 510, 511 (7th Cir. 2012) (citing *Denton v. Hernandez*, 504 U.S. 25, 34 (1992)). In *Keller*, the Seventh Circuit found that because the plaintiff's second suit was also brought *in forma pauperis*, it was precluded by the claims from his first suit that were based on the same facts. *Id.* Here, the Court did not dismiss McKinley's instant due process claim for frivolousness on threshold review, but noted that the factual allegations overlapped with the claims in 2013 McKinley and 2014 McKinley (Doc. 20). The Court further stated that it was unable to assess the extent to which the claims were duplicative without additional information, but that it would address the matter in due course (*Id.*). That time is now.

The Court agrees with McKinley that both suits raise different *claims*. Count I of 2013 McKinley focused on the deprivation of McKinley's property rights without due process of law, while Count I of this lawsuit focuses on the deprivation of McKinley's liberty interest without due process of law. But both claims arise from the same *factual allegations*: McKinley was in AD and was deprived of his property and liberty interests without a hearing. McKinley cannot evade preclusion simply by raising a different theory of recovery when the claims are based on the same facts. *Barr*, 796 F.3d at 840.

Judge Beatty further surmised that when McKinley filed suit in 2013, he had been confined in AD for less than a year, so it was unlikely that the issue of continued

placement could have been resolved in that action. The Court disagrees. When McKinley filed suit on September 11, 2013, he had already been in AD for nearly a year. Three of the alleged "sham" reviews of his AD status had been completed by that date. McKinley certainly could have included the issue of his continued placement in AD in his 2013 complaint. Because he could have raised that claim, but didn't, he is precluded from bringing it now as to Harrington and Atchison. They will be granted summary judgment on McKinley's due process claims.

The same cannot be said for the remaining Defendants, as they have not put forth any evidence to demonstrate that there is an identity of the parties or their privies in the two actions. Accordingly, summary judgment will not be granted to the remaining Defendants on the grounds of *res judicata*.

## II. Due Process

Defendants next object to Judge Beatty's conclusion that there is a genuine issue of material fact with regard to whether the periodic reviews McKinley received while in AD constituted due process. They note that the Report and Recommendation focuses on the process McKinley received upon his initial placement in AD (which Judge Beatty previously found was not at issue in this suit), as well as his lack of meaningful review until July 2014. Defendants assert that McKinley has not and cannot present any evidence suggesting the periodic reviews performed related to his AD placement were a sham. Instead, the evidence in the record demonstrates that the Administrative Detention Unit Review Committee consisted of correctional employees with varied backgrounds and areas of expertise who collectively evaluated his placement in the ADU.

The Due Process Clause of the Fourteenth Amendment applies to deprivations of life, liberty, and property. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). Courts engage in a two-step process in procedural due process cases. *Id.* First, they determine whether the plaintiff was deprived of a protected property or liberty interest. If so, they determine what process was due under the circumstances. *Id.*

A sanction of AD or segregation can implicate a liberty interest if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). With regard to segregation, the Court should consider the length of segregation and the conditions endured. *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009) ("a liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh"). If the conditions of segregation were significantly harsher than those in the normal prison environment, then a year of segregation "might count as a deprivation of liberty where a few days or even weeks might not." *Bryan v. Duckworth*, 88 F.3d 431, 433 (7th Cir. 1996), abrogated on other grounds, *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998); *see also Wagner v. Hanks*, 128 F.3d 1173, 1174, 1177 (7th Cir. 1997) (vacating a dismissal on the pleadings and remanding for additional fact-finding on whether the conditions of segregation were significantly harsher than the normal prison environment with respect to a one-year term of segregation).

Here, McKinley was in AD for more than three years, which warrants a review into the conditions endured. McKinley alleges his AD cell was infested with mice,

cockroaches, and other bugs, the window was cracked, the heat was broken, and he had no hot water for months at a time. He also was denied cleaning supplies. The Court finds that these conditions, which McKinley allegedly endured for more than three years, are harsher than the normal prison environment and invoke a protected liberty interest. Finding a protected liberty interest at stake, the Court now turns to the process McKinley was due.

In *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), the Supreme Court held that "the Due Process Clause mandates that prison officials periodically review whether an inmate placed in administrative segregation continues to pose a threat." *Isby*, 856 F.3d at 524 (citing *Hewitt*, 459 U.S. at 468 (*abrogated in part on other grounds by Sandin*, 515 U.S. 472)). The Court further acknowledged that inmates "retain only a narrow range of protected liberty interests," and that "broad discretionary authority is necessary because the administration of a prison is at best an extraordinarily difficult undertaking." *Hewitt*, 459 U.S. at 467. The Court concluded that a prison's internal security is best left to the discretion of prison administrators and, although administrative segregation cannot be used as a pretext for indefinite confinement, the periodic review of that confinement required to meet due process "will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Isby*, 856 F.3d at 252 (quoting *Hewitt*, 459 U.S. at 477 n.9).

The record reflects that on January 25, 2013, April 25, 2013, July 25, 2013, October 25, 2013, January 24, 2014, and April 25, 2014, an Administrative Detention Review was performed (Doc. 190-5 at p. 7; Doc. 192-2 at pp. 10-14). On April 25, 2013, McKinley was

moved to Phase 3 of AD, a less restrictive phase with more privileges (Doc. 192-2 at pp. 1-10).[4] The forms also note that McKinley is part of the Spanish Cobras Security Threat Group and that he has a low aggression level (*Id.*). The January 24, 2014 and April 25, 2014 forms state that STG activity had been noted during the program placement (Doc. 192-2 at pp. 13-14). On each form the Committee recommended that McKinley continue in the program (*Id.*). The reason given for the recommendation each time was to continue the program for further observation (*Id.*).

On July 2, 2014, an Administrative Detention Placement Review occurred (*Id.* at p. 15). McKinley was informed prior to the hearing that the reason for the detention placement was because he was identified as having influence among the Latin Folks Security Threat Group Family and was next in line to take a leadership role at Menard (*Id.*). He also was identified as using his influence in pushing for staff assaults (*Id.*). McKinley prepared an affidavit to submit at the review hearing (*Id.* at p. 17).

The form documenting the July 2, 2014 Administrative Detention Review indicates that McKinley was placed in AD for the safety and security of the facility or person and because of his behavior and disciplinary history (*Id.* at p. 18). The comments section again noted his influence with the Latin Folks, his upcoming leadership role at Menard, and his influence in pushing for staff assaults (*Id.*). The Committee recommended continuing AD for continued observation "due to leadership and influence with the Latin Folks." (*Id.*).

---

[4] For example, Phase III offenders are allowed to go to yard twice weekly in three-hour increments with up to ten offenders at a time. They may have a TV and radio. They are allowed commissary privileges consistent with inmates in general population. They may shower twice per week, five inmates at a time. And, they can have three, 2-hour visits per month. (Doc. 192-2 at pp. 1-9).

The next in-person review occurred September 23, 2014 (*Id.* at p. 20). McKinley provided another written statement, but this time stated only that he had pending litigation and believed it was not in his best interest to say anything (*Id.* at p. 21). The Committee again recommended continuing Phase 3 of AD, noting his influence among the Latin Folks, his leadership role, and push for staff assaults (*Id.* at p. 22).

McKinley had another in-person review scheduled for December 16, 2014, but he refused to attend the hearing (*Id.* at p. 28). The Committee made the same recommendation to continue AD for further observation (*Id.*). The same recommendation was again made on March 13, 2015, June 12, 2015, and September 9, 2015, but there was no justification for the recommendation provided (*Id.* at pp. 32, 36; Doc. 192-3 at p. 1).

Based on these facts, the Court finds that McKinley received all process he was due. Under *Hewitt*, McKinley was entitled to "informal and nonadversary" periodic review, and that is what he received. True, under *Isby*, prison officials cannot rely on "the rote repetition of the same two boilerplate sentences following each review." *Isby*, 856 F.3d at 528. In *Isby*, however, the prisoner plaintiff had been in segregation for more than ten years, there were long stretches in which he had no serious disciplinary problems, and there was conflicting evidence as to the reasons for his ongoing segregation. *Id.* The reasoning provided for Isby's continued placement in segregation was: "Your status has been reviewed and there are no changes recommended to the Southern Regional Director at this time. Your current Department-wide Administrative segregation status shall remain in effect unless otherwise rescinded by the Southern Regional Director." *Id.* at 515. There also was differing testimony as to why Isby remained in segregation *Id.* at 515-16.

Here, McKinley was observed engaging in Security Threat Group activity twice during his time in AD. And the comments on his review forms provide an actual reason for why he was in AD: he was identified as having influence among the Latin Folks, he was next in line for a leadership role, and he used his influence in pushing for staff assaults. His September 9, 2015 form states that he was identified "within the last year . . . as still utilizing leadership role." (Doc. 192-3 at p. 1). *See Isby*, 856 F.3d at 527 ("Even one or two edits or additions [to the review forms] along these lines could assuage our concerns and provide helpful notice to Isby as to the reasons for his placement . . ."). Clearly, prison officials found that McKinley continued to engage in gang activity and use his influence as a leader while he was in AD, which was the basis for continuing his placement. Because McKinley has presented no other evidence that the periodic reviews were a sham or pretextual, the Court finds that McKinley's due process claim fails.

## III. Statute of Limitations

Finally, Defendants argue that all of McKinley's claims that occurred prior to June 17, 2014, should be barred by Illinois's two-year statute of limitations. Because the only presently remaining claims are McKinley's retaliation and conditions of confinement claims, the Court analyzes the statute of limitations in the context of those claims.

Section 1983 suits in Illinois have a two-year statute of limitations. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). "A cause of action accrues when the plaintiff has a complete and present cause of action—in other words, when the plaintiff can file suit and obtain relief." *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019). "Put another way, a personal injury claim raised under § 1983 accrues when the plaintiff

knows or has reason to know of the injury which is the basis of his action."

Here, Defendants argue that as early as September 2013, McKinley was aware of his claims related to continued administrative detention. They also argue that his continued placement in AD does not constitute a "continuing violation" such that the statute of limitations does not begin to run until the last violation.

The Court disagrees. The continuing violation doctrine applies to ongoing constitutional violations, such as the continued refusal to provide medical care, *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001), or repeated unconstitutional lockdowns, *Turley*, 729 F.3d at 651. A claim related to a continuing violation accrues on the date of the last violation, not the date of the first violation. *Turley*, 729 F.3d at 651. Thus, a plaintiff may "'reach back' to the beginning of the wrong, 'even if that beginning lies outside the statutory limitations period.'" *Watkins v. Ghosh*, 2011 WL 5981006, at *3 (N.D. Ill. Nov. 28, 2011) (quoting *Heard*, 253 F.3d at 319).

Here, McKinley alleges that he was held in AD for 1,096 days in retaliation for filing grievances and lawsuits against Defendants and that he was subjected to unconstitutional conditions of confinement during that time, including a broken window, no heat, no hot water, and a dirty cell with rodent feces and no access to cleaning supplies. The Court finds that each day McKinley was allegedly kept in AD under these conditions as retaliation for his First Amendment activity constitutes a continuous series of events. McKinley was in AD for more than three years; it would be unreasonable to require him to file suit every day after the initial two years in order to timely preserve his claim. *See Heard*, 253 F.3d at 320. Because McKinley has alleged a continuing violation of his rights,

Defendants' statute of limitations argument fails.

IV.     **Qualified Immunity**

Because Defendants do not object to Judge Beatty's conclusion that they are not entitled to qualified immunity, the Court reviews that finding only for plain error. Finding none, the Court adopts this portion of the Report and Recommendation.

CONCLUSION

For the reasons set forth above, the Court **ADOPTS in part and REJECTS in part** the Report and Recommendation of Magistrate Judge Beatty (Doc. 208). The Motion for Summary Judgment filed by all Defendants (Doc. 189) is **GRANTED in part and DENIED in part.**

Summary judgment is **GRANTED** to all Defendants on McKinley's due process claim under the Fourteenth Amendment. Count I is **DISMISSED with prejudice**.

This case shall now proceed on Counts II and III against all Defendants. Defendants are **GRANTED** leave to refile their Motion to Consolidate this case with 3:14-cv-01137-NJR-MAB for pretrial matters and trial.

IT IS SO ORDERED.

DATED:   September 30, 2019

_____
   **NANCY J. ROSENSTENGEL**
   **Chief U.S. District Judge**